United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILIPPE BACHMANN, et al.,
Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.,
Defendants.

Case No. 22-cv-06250-ASK

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 134

While on a hike with his family on Sweeney Ridge in Golden Gate National Recreation Area ("GGNRA") on May 25, 2020, minor Plaintiff J.B. was exploring a World War Two-era Coast Guard building when he stepped on an unsecured steel plate. The plate tipped, causing J.B. to fall five feet to the crawlspace floor below, where he ended up pinned beneath the plate. This lawsuit concerns whether the United States is liable under the Federal Tort Claims Act ("FTCA") for his resulting injuries. 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. §§ 2671–2680.

Plaintiffs J.B., his parents Philippe and Megan Bachmann, and his minor sister H.B. (collectively, "Plaintiffs") filed a Third Amended Complaint, which is operative. Dkt. 133 ("TAC"). Defendant United States of America moved to dismiss the TAC under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Dkt. 134 ("Mot."). For the reasons set forth below, the Court converts the Motion to one for summary judgment under Federal Rule of Civil Procedure 56 and GRANTS IN PART and DENIES IN PART the Motion.

## I. BACKGROUND

In approximately 2016, the United States hired a contractor to conduct a survey of potentially contaminated materials at several Sweeney Ridge sites, including the subject Coast Guard building. TAC at 4; Mot. at 5. A National Park Service ("NPS") employee, Matthew Keene, accompanied the contractor, Nadia Burleson, while she performed her survey, which

consisted primarily of taking soil and materials samples. *See* Dkt. 137 ("Keene Decl."). Keene states in a declaration that there was a "small void space" in the subject building, that he "do[es] not recall if the space was covered," and that he "did not participate in, supervise, and/or observe the Contractor's placement of a steel plate" over the opening. *Id.* at 2. Burleson, for her part, stated at her deposition that the opening was not covered and that she did not recall any potential cover being present. Dkt. 138-5 at 52 ("Burleson Dep."). The survey report that she produced, which was reviewed by NPS employees in September 2016, includes a picture of someone using a ladder to descend into the crawlspace through the opening, with no cover in view. Dkt. 138-8 at USA-006452; Dkt. 138-9. It was this rectangular opening, which measures roughly two feet by two feet, that J.B. fell through in May 2020. Mot. at 4. There is no evidence in the record that sheds light on when or how the steel plate came to be in the Coast Guard building by the time J.B. stepped on it.

## II. LEGAL STANDARD

Rule 12(b)(1) challenges may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). Facial challenges attack the sufficiency of a complaint's allegations, considered on their face, to invoke federal jurisdiction. *Id.* Factual challenges dispute the truth of facially sufficient allegations. *Id.* Where, as here, the movant presents evidence to support its motion, the attack is factual. *See id.* (citation omitted).[1]

But where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action," treating the motion as a pleadings challenge is inappropriate. *See id.* (citation and quotation mark omitted). Such intertwinement is present where "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.* (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (citation omitted)). The FTCA provides both such bases here, rendering a Rule 12(b)(1) challenge unsuitable.

The Court accordingly converts the pending Motion into one for summary judgment under

[1] At oral argument, the United States maintained that the TAC's allegations of willfulness are conclusory, such that the Motion may be construed as a facial challenge.

Rule 56, in which form the Court may more properly consider the intertwined jurisdictional and merits issues in dispute. *See Bressi v. Ford*, 575 F.3d 891, 893 n. 1 (9th Cir. 2009) (noting the District Court's conversion under similar conditions of intertwinement). Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* In determining whether a dispute is genuine, the Court draws reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## III. DISCUSSION

The United States, as a sovereign, may not be sued without its consent. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) (citations omitted). The FTCA waives this immunity with respect to claims that are:

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)); *see Richards v. United States*, 369 U.S. 1, 6 (1962). The pending Motion primarily concerns the last of these elements.

### A. California's Recreational Use Statute

"California law imposes a duty on people, including landowners, to use reasonable care under the circumstances to prevent injury to others." *Cleveland v. United States*, 546 F. Supp. 2d 732, 770 (N.D. Cal. 2008) (citing *Alcaraz v. Vece*, 14 Cal.4th 1149, 1156, 60 Cal.Rptr.2d 448, 929 P.2d 1239 (1997)). California's recreational use statute "alters this general rule by immunizing landowners from liability for injuries suffered by people who use their land for recreational

purposes." *Id.* (citing *Avila v. Citrus Community College Dist.*, 38 Cal.4th 148, 156, 41 Cal.Rptr.3d 299, 131 P.3d 383 (2006)). The statute itself provides that landowners owe "no duty of care to keep the premises safe for entry or use by others for any recreational purpose." Cal. Civ. Code § 846(a) ("Section 846").

Determining whether the "United States, if a private person, would be liable" on the instant facts under California law depends on the application of this statute. The parties agree that Plaintiffs were in Sweeney Ridge for a "recreational purpose" and agree also that if Section 846 is found to apply the government will prevail. *See* Dkt. 138 at 6 ("Opp'n"); Dkt. 139 at 2 ("Reply"). But they disagree about whether the United States is subject to a statutory exception to recreational use immunity for a landowner's "[w]illful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." Cal. Civ. Code § 846(d)(1).

"The meaning assigned to wil[l]ful misconduct by the California courts is any intentional act of an unreasonable character undertaken in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it, and so great as to make resulting harm highly probable." *Spires v. United States*, 805 F.2d 832, 834 (9th Cir. 1986) (quoting *Rost v. United States*, 803 F.2d 448, 451 (9th Cir.1986)). To prove willful misconduct under California law, a plaintiff must establish three elements: "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril." *Id.* (quoting *Morgan v. Southern Pacific Transportation Co.*, 37 Cal.App.3d 1006, 1012, 112 Cal.Rptr. 695, 698 (1974)). The United States argues that none of these elements is satisfied. Mot. at 12–16. Plaintiffs argue that all of them are. Opp'n at 6–11.

The record establishes that the government, via NPS employee Matthew Keene, knew of the hole as of the 2016 site visit. *See* Keene Decl. at 2 (noting the presence of a "small void space"). With respect to the second element, there is no direct evidence—such as an admission from a government employee—establishing that Keene or any other government employee knew that the hole would probably cause injury. Nevertheless, when viewing the facts in the light most favorable to the Plaintiffs, the Court considers an unmarked five-foot-deep hole in the floor to be a

condition that a reasonable person in Keene's position would consider likely to cause injury. As to the third element, a reasonable trier of fact could find a conscious failure to act. *See Rost v. United States*, 803 F.2d 448, 451–52 (9th Cir. 1986) (affirming the District Court's finding of willfulness where the government "knew of the [dangerous] condition for at least a year before the accident, yet failed to repair it"). Here, the record can reasonably be interpreted to show that Keene knew about the hole and appreciated the danger it posed, but did not care enough about averting that danger to do anything about it.

The Court recognizes that at oral argument it expressed an inclination to view the facts as the government would have it view them. In the government's view, the relevant "dangerous condition" for purposes of applying the recreational use statute is the steel plate, not the hole itself. *Id.* Notably, there is no evidence in the record indicating that the government knew of the steel plate's existence at all.[2] The United States has argued that such absence means that the first and second elements of the willful misconduct test, both going to knowledge, cannot be satisfied. *See* Mot. at 13–14; Reply at 2–8; *see also Spires*, 805 F.2d at 834. During argument, the Court found this position persuasive.

But on reflection the Court has come to see Plaintiffs' preferred view of the facts as sufficiently reasonable to preclude summary judgment. To begin with, understanding the hole itself to be the relevant dangerous condition makes good sense—after all, J.B. fell into the hole, even if the steel plate played some part in causing his injuries. And, as discussed above, the record establishes that Keene had knowledge of the hole as of 2016.[3] *See* Keene Decl. at 2. A reasonable trier of fact viewing the evidence in this way could conclude that between 2016, when Keene noticed the hole, and 2020, when J.B. fell into it, the government knew about but chose not to address the danger posed by the hole. *See Rost*, 803 F.2d at 451–52. The Court must view

[2] As the government itself states, the steel plate "could have materialized—without NPS's knowledge—at any point" between the 2016 site visit and J.B.'s 2020 fall. Mot. at 14.

[3] The government argues that there is no evidence that NPS knew the hole was open. Reply at 4–6. But Burleson recalls that on the day she and Keene visited the site, the opening was not covered. Burleson Dep. at 52. Even Keene's recollection of a "void space" can be taken to imply that it was open. Keene Decl. at 2. Either piece of evidence is sufficient to create a triable issue as to Keene's knowledge of an uncovered hole.

inferences reasonably drawn from the underlying facts in the light most favorable to Plaintiffs, which here means crediting such a version of events. *See Matsushita*, 475 U.S. at 587–88. Accordingly, there is a material factual dispute as to whether the government willfully failed to guard against a dangerous condition, and summary judgment is not appropriate. Cal. Civ. Code § 846(d)(1).

**B. The Government's Other Arguments**

The government advances various other arguments for why the TAC is deficient. One has to do with the TAC's three causes of action: premises liability, negligent undertaking, and negligent infliction of emotional distress. TAC at 6–11; see Mot. at 17–19. The government contends that "these are not three separate claims, but rather three theories of negligence under one negligence cause of action." Mot. at 17. Under California law, "[a]s to any given defendant, only one standard of care obtains under a particular set of facts, even if the plaintiff attempts to articulate multiple or alternate theories of liability." *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 998, 884 P.2d 142, 145 (1994) (citations omitted). All theories pled here pertain to the same facts, and accordingly one standard of care will govern: willful misconduct, as is required to establish liability under California's recreational use statute. *See* Section III(A), *supra*. Accordingly, whether Plaintiffs are required to elect between these theories, or whether Plaintiffs may proceed on all three theories in the alternative, the government has not advanced a reason as to why summary judgment must be granted now as to some or all of these theories.

The United States also argues that it has not waived sovereign immunity with respect to the conduct of Burleson—the contractor dealing with contamination issues—and that it has not waived sovereign immunity with respect to its supervision of Burleson. Mot. at 19–25. The parties dedicate significant portions of their briefing to these theories and the applicability of FTCA exceptions for independent contractors and discretionary functions. But because neither Burleson's conduct nor the government's supervision of such conduct gives rise to a reasonable inference of willful misconduct, any theory of liability predicated solely thereon must fail as a matter of law.

Finally, the government asserts that the TAC's request for a jury trial (TAC at 11) and

prejudgment interest (*id.* at 12) are expressly barred by the FTCA. Mot. at 25 (citing 28 U.S.C. §§ 2402, 2674) (additional citations omitted). The government is correct on these points, which Plaintiffs concede. Opp'n at 16; *see Johnson v. United States*, 734 F. App'x 436, 440 (9th Cir. 2018) (noting that "[t]he statute explicitly prohibits a jury trial"); *Brumfield v. Dep't of Veteran Affairs*, No. 14-cv-04647-JSC, 2015 WL 294380, at *3 (N.D. Cal. Jan. 22, 2015) (observing that "the FTCA bars recovery of prejudgment interest").

## IV. CONCLUSION

For the reasons set forth above, the Court (1) converts the Motion to one for summary judgment under Federal Rule of Civil Procedure 56; (2) GRANTS such Motion with respect to theories of liability based solely upon either Burleson's conduct or the government's supervision of such conduct; (3) otherwise DENIES such Motion; and (4) strikes from the TAC pursuant to Federal Rule of Civil Procedure 12(f) Plaintiffs' requests for a jury trial and for prejudgment interest.

**IT IS SO ORDERED.**

Dated: September 18, 2026

AJAY KRISHNAN
United States Magistrate Judge